**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JASON SCOTT SWANN, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-cv-509 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| DETECTIVE JOEHONNY REESE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____

**ENTRY AND ORDER GRANTING THE HAMILTON COUNTY**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED**
**COMPLAINT (DOC. NO. 30)**
_____

This case is before the Court on the Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 30) (the "Motion"), filed by Defendants Clerk Aftab Pureval ("Pureval"), Deputy Clerk Gloria Hartman ("Hartman"), and the Hamilton County Clerk of Courts (collectively, the "Hamilton County Defendants"). The Hamilton County Defendants move to dismiss all claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court **GRANTS** the Motion and **DISMISSES** the Hamilton County Defendants from this case.[1]

## I.     BACKGROUND

This background section is based on <u>allegations</u> made by Plaintiff Jason Scott Swann ("Swann") in the Amended Complaint (Doc. No. 26). According to the Amended Complaint, this case arises "from the issuance of a facially invalid warrant which was issued without a lawful

---

[1] The case will continue against Defendants City of Kettering, Melissa Murray, and Joshua Wolf (all of whom filed an answer to the Amended Complaint), as well as any John/Jane Doe defendants. (*See* Doc. No. 26; Doc. No. 27; Doc. No. 28.)

probable cause finding." (Doc. No. 26 at PageID 313.) "Thirty-two-year-old Plaintiff [Jason Swann] of Kettering, Ohio was accused of being the wanted 44-year-old [Josh Swann] of Cincinnati who, through his business Window City, ripped off countless people." (*Id.* at PageID 314.) "The victim of the charged crime, Felony Theft, told [Defendant Officer Kenneth W. Root] and/or [Defendant Detective Joehonny N. Reese] of Cincinnati Police Department the victim met in person with 'Josh Swann' of Window City, could identify and did identify Josh Swann for Officer Root and/or Detective Reese, and that 'Josh Swann' took a check he cashed in the amount of $2,750 but failed to deliver and install the promised windows." (*Id.*) The police investigation "culminat[ed] in the November 12, 2019 facially invalid Warrant, Complaint and Affidavit [that] deliberately made false claims, and/or acted with [sic] a reckless disregard for the truth by Officer Root, Detective Reese, and [Defendant Sergeant Andre Smith], at a minimum." (*Id.*) The Warrant, Complaint, and Affidavit all name Josh S. Swann, not the Plaintiff in this case. (Doc. No. 26-2; Doc. No. 26-3; Doc. No. 26-4.)

Regarding the Hamilton County Defendants, the Amended Complaint alleges that "Hartman authorized the issuance of the facially invalid Warrant and Complaint before or after pencil whipping[2] the Probable Cause Check List, and the Warrant issued in the absence of a proper probable cause determination out of the Hamilton County Municipal Court under the Authority of Hamilton County Clerk of Courts Aftab Pureval." (Doc. No. 26 at PageID 314; *see also id.* at PageID 319, 326.) According to the Amended Complaint, "Deputy Clerk Hartman unlawfully rubber stamped the Warrant in violation of Plaintiff's civil rights"; "[t]he Probable Cause Check List and its use forms the basis of an unconstitutional policy, procedure and custom existing in the

---

[2] The Amended Complaint asserts that "[p]encil whipping a document means to complete a form or record, especially a checklist, without doing the work required or by providing falsified or incomplete information." (Doc. No. 26 at PageID 314.)

Hamilton County Clerk of Courts"; and, "[t]he Deputy Clerks, including Deputy Clerk Hartman, have been unconstitutionally trained and supervised by Clerk Pureval leading up to and after the issuance of the unlawful arrest Warrant for Plaintiff." (*Id.* at PageID 326-27.) As referenced above, the issued Complaint and Warrant name Josh S. Swann (not the Plaintiff), thus matching the Affidavit signed by Detective Reese. (Doc. No. 26-2; Doc. No. 26-3; Doc. No. 26-4.) In other words, nowhere is Plaintiff named on the Complaint, Warrant, or Affidavit. (*Id.*)

The Amended Complaint in this case alleges that "[Deputy Clerk] Hartman, [Detective] Reese and [Sergeant] Smith knowingly caused the sham legal process, the arrest Warrant, to be entered into the electronic LEADS system or other similar system to cause law enforcement in the state and country to effect an unlawful arrest, detention, search, or seizure of any person or property of another person …" (Doc. No. 26 at PageID 338.) "Then, on December 23, 2019 Kettering Police Officer [Defendant Joshua] Wolf and Dispatcher [Defendant Melissa] Murray worked together with other Defendants named herein and/or Jane/Joe Does to execute the Warrant to arrest Plaintiff after Officer Wolf ran his license and received a hit for an outstanding arrest warrant." (*Id.* at PageID 314.) "Plaintiff was detained for 27 hours and not released from jail until 10:24 p.m. on Christmas Eve, December 24, 2019." (*Id.*) At least as of February 7, 2020, the allegedly unlawful warrant "still had not been cancelled." (*Id.*) And, according to the Amended Complaint, Swann's "identity is still being unlawfully associated with a now convicted criminal as [Swann] received a letter from Hamilton County Clerk of Courts, dated August 19, 2020 [and a similar letter dated February 12, 2021], … advising of an unclaimed Bonds Deposit." (*Id.* at PageID 315.)

According to the Complaint, Pureval "was at all times relevant to this action the elected Clerk of Courts employed by the Hamilton County Clerk of Courts." (Doc. No. 26 at PageID 316.) He is sued both individually and in his official capacity as an employee of the Hamilton County

Clerk of Courts. (*Id.*) Hartman "was at all times relevant to this action a Deputy Clerk employed by the Hamilton County Clerk of Courts." (*Id.* at PageID 317.) She too is sued both individually and in her official capacity as an employee of the Hamilton County Clerk of Courts. (*Id.*) And, "Defendant Hamilton County Clerk of Courts, Ohio is a political subdivision organized under the laws of the State of Ohio and situated in Hamilton County, Ohio," and it "is sued under a theory of municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978)." (*Id.* at PageID 316-17.)

On July 12, 2021, Swann filed the Amended Complaint against a host of defendants. (Doc. No. 26.) Of the seven causes of action in the Amended Complaint, he asserts five causes of action against one or more of the Hamilton County Defendants:

1. [First Cause of Action] False arrest and imprisonment in violation of 4th and 14th Amendments and Ohio common law – *brought against Pureval (both individual and official capacities), Hartman (both individual and official capacities), and the Hamilton County Clerk of Courts*;

2. [Second Cause of Action] Malicious prosecution in violation of 4th and 14th Amendments and Ohio common law – *brought against Pureval (both individual and official capacities), Hartman (both individual and official capacities), and the Hamilton County Clerk of Courts*;

3. [Fourth Cause of Action] Violation of § 1983 – *brought against the Hamilton County Clerk of Courts*;

4. [Sixth Cause of Action] Civil liability for criminal acts under Ohio Rev. Code § 2307.60(A)(1) – *brought against Pureval (both individual and official capacities) and Hartman (both individual and official capacities)*; and

5. [Seventh Cause of Action] Civil liability for criminal act under Ohio Rev. Code § 2921.52 – *brought against Hartman (both individual and official capacities)*.

(Doc. No. 26 at PageID 334-40.) The first two causes of action allege that the Hamilton County Defendants are liable under 42 U.S.C. § 1983 ("Section 1983"). (*Id.*) The fourth cause of action is a Section 1983 *Monell* claim based on an alleged practice, policy, or custom of the Hamilton County Clerk of Courts. (*Id.*) The sixth cause of action alleges that the underlying alleged criminal

4

acts included "Dereliction of duty" (under Ohio Rev. Code § 2921.44) and "Interfering with civil rights" (under Ohio Rev. Code § 2921.45).  (*Id.*)  The seventh cause of action alleges that the underlying criminal act included "Using sham legal process" (under Ohio Rev. Code § 2921.52). (*Id.*)

Along with compensatory and punitive damages, the Amended Complaint seeks a declaration, which essentially would state that the Defendants' acts and conduct have violated the law.  (Doc. No. 26 at PageID 341.)

The Hamilton County Defendants filed the Motion on July 26, 2021.  (Doc. No. 30.) Swann filed an Opposition to the Motion on April 11, 2022.[3]  (Doc. No. 44.)  The Hamilton County Defendants filed their Reply in support of the Motion on April 25, 2022.  (Doc. No. 47.)  The Motion is fully briefed and ripe for review.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this rule "does not require 'detailed factual allegations' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6) (providing for motions to assert a "failure to state a claim upon which relief can be granted").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[3] After the Court stayed the case for a period of time, and after an unsuccessful mediation, the Court entered judgment on Swann's claims against Defendants Reese, Root, Smith, Borger, Issac, and the City of Cincinnati on April 13, 2022, pursuant to an accepted Rule 68 offer of judgment.  (*See* Doc. No. 40; Doc. No. 43; Doc. No. 45.)

on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

## III.   ANALYSIS

In the Motion, the Hamilton County Defendants make a number of different arguments to support dismissing each of the claims against each of the Hamilton County Defendants (in all capacities in which they are sued). (Doc. No. 30.) Swann responds that the "Hamilton County Defendants failed to lawfully fulfill the gatekeeper role, and neither federal nor state law immunity entitles the Hamilton County Defendants to the order [they] seek[] dismissing all claims plead against them." (Doc. No. 44 at PageID 522.)

6

## A. **Federal Claims**

### 1) **Absolute Immunity**

The Court first addresses the Hamilton County Defendants' argument that Pureval and Hartman are entitled to absolute immunity from the federal claims against them in their individual capacities. "The availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). "[T]he proponent of the claim of absolute judicial immunity … bears the burden of establishing that such immunity is warranted." *Id.*

The Sixth Circuit has explained that judges generally "have broad immunity from being sued" and that such immunity equally protects "officers who perform judicial duties, such as officers who issue arrest warrants." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (judicial commissioner who issued an arrest warrant was entitled to judicial immunity in a Section 1983 action); *see also Leppla v. Kagel*, No. 3:19 CV 2487, 2020 U.S. Dist. LEXIS 157774, 2020 WL 5106841, at *4 (N.D. Ohio Aug. 31, 2020) (absolute judicial immunity "has been extended to non-judicial officers, such as a clerk of courts, who is performing judicial functions"). However, "[j]udicial immunity does not extend to everything a judge (or affiliated officer) does." *Norfleet*, 924 F.3d at 319. "Judges lack immunity for liability arising from non-judicial actions, say driving to and from work." *Id.* "And they lose immunity when they act in the complete absence of all jurisdiction." *Id.* (internal quotation marks omitted). Given that courts "err on the side of granting immunity in close cases," the overarching question is whether judges clearly overstep their authority. *Id.* In fact, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject only when he has acted in the clear absence of all jurisdiction." *DePiero v. City of Macedonia*, 180 F.3d 770, 785 (6th Cir. 1999) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)) (internal

7

quotation marks omitted); *see also Brookings*, 389 F.3d at 617, 622 (the defendant was entitled to judicial immunity despite the fact that he "may have twisted the arms of the prosecutor to get the case prosecuted"; explaining that "judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice as has been alleged in this case").

This leads to two questions in determining whether absolute judicial immunity applies: (1) did the defendant perform a judicial act, and (2) did the defendant clearly lack authority to perform that act? *Norfleet*, 924 F.3d at 320. Regarding the first question, "[i]ssuing an arrest warrant is a judicial act." *Id.*; *see also DePiero*, 180 F.3d at 784 ("[i]t is well-settled in this Circuit that the issuance of an arrest warrant is a judicial act for judicial immunity purposes"). Regarding the second question, nothing "clearly deprived" Pureval or Hartmann "of subject matter jurisdiction to issue" an arrest warrant. *Norfleet*, 924 F.3d at 320 (demonstrating that Tennessee statutes provided judicial commissioners, like the defendant in that case, with the authority to issue arrest warrants). Ohio law provides that clerks of court may issue arrest warrants. *See, e.g.,* Ohio Rev. Code § 2303.26 (duties of clerk); Ohio Rev. Code § 2935.10(A) (an arrest warrant may be issued by a clerk); Ohio Crim. R. 4(A)(1) (an arrest warrant may be issued by a clerk of court). Pureval and Hartman did not "act in the complete absence of all jurisdiction." *Norfleet*, 924 F.3d at 319.

Therefore, the Court finds that Pureval and Hartman have met their burden of establishing that absolute judicial immunity is warranted with respect to the federal individual-capacity claims made against them. The First Cause of Action and Second Cause of Action against Pureval and Hartmann in their individual capacity are dismissed. *Norfleet*, 924 F.3d at 320; *Helton v. Dixon*, No. Civ. A. 05CV377KKC, 2006 U.S. Dist. LEXIS 11791, 2006 WL 751239, at *9-10 (E.D. Ky. Mar. 21, 2006) (conduct of the trial commissioner, who was vested with the power to issue an arrest warrant, was protected by judicial immunity and, therefore, not actionable under § 1983,

even though the complaint alleged that she signed the arrest warrant without any probable cause and acted maliciously toward the plaintiff by signing the arrest warrant); *Leppla*, 2020 WL 5106841, at \*4 ("[a] court clerk's involvement with the issuance of arrest warrants is a judicial act and is protected by absolute immunity" and "[a] clerk's involvement in failing to recall an executed or invalid warrant is likewise a judicial act").

### 2) Redundancy of Official-Capacity Claims

As set forth above, Pureval and Hartman are also sued in their official capacity as employees of the Hamilton County Clerk of Courts.  (Doc. No. 26 at PageID 316-17.)  In contrast to individual-capacity suits, which "seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted).  Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Therefore, the claims against Pureval and Hartman in their official capacity are treated as claims against the Hamilton County Clerk of Courts.  The First Cause of Action and the Second Cause of Action are brought against Purveal and Hartmann in their official capacity (therefore, against the Hamilton County Clerk of Courts) and, separately, against the Hamilton County Clerk of Courts.  Therefore, the official-capacity claims are redundant. *Foster v. Mich.*, 573 F. App'x 377, 390 (6th Cir. 2014) ("[w]here the entity is named as a defendant, an official-capacity claim is redundant").  Accordingly, the Court dismisses the superfluous official-capacity claims against Pureval and Hartmann set forth in the First Cause of Action and Second Cause of Action because those same claims are brought against the Hamilton County Clerk of Courts. *J.H. v. Williamson Cnty., Tenn.*, 851 F.3d 709, 723 n.4 (6th Cir. 2020) (holding that the district court correctly

dismissed the official-capacity claims against employees of a county agency "as superfluous of the claim against the county" itself); *Foster*, 573 F. App'x at 390 (because the governmental entity was named as a defendant, the official-capacity claims against the employees of that governmental entity were superfluous); *Professionals Guild of Ohio v. Butler Cnty. Bd. of Developmental Disabilities*, No. 1:14-cv-161, 2014 U.S. Dist. LEXIS 165319, 2014 WL 6687134, at *1 (S.D. Ohio Nov. 26, 2014) ("[a]n official-capacity claim brought against an officer or employee of a governmental entity in his or her official capacity is treated as a claim against the governmental entity," and, therefore, "when a complaint asserts a claim against an officer or employee of a governmental entity, in his or her official capacity, and against the governmental entity itself, a district court may dismiss the official-capacity claim").

### 3) Sovereign Immunity

Next, the Court addresses whether sovereign immunity applies to the federal claims against the Hamilton County Clerk of Courts. "Under the Eleventh Amendment, sovereign immunity bars suit against a state or its agencies, unless the state has waived that immunity or Congress has overridden it." *Leppla*, 2020 WL 5106841, at *5; *see also Williams v. Leslie*, 28 F. App'x 387, 388 (6th Cir. 2002) ("[t]he Eleventh Amendment is a limitation on federal subject matter jurisdiction"). The Sixth Circuit has explained that Ohio's courts "are arms of the state for purposes of § 1983 liability and the Eleventh Amendment." *Williams*, 28 F. App'x at 388-89; *see also Ward v. City of Norwalk*, 640 F. App'x 462, 464 (6th Cir. 2016) ("the Norwalk Municipal Court is considered an arm of the state for the purposes of § 1983 and the Eleventh Amendment and is not subject to suit"). "[T]he clerks of court," who operate under the court's authority, "are likewise arms of the state of Ohio for purposes of § 1983 liability, at least when they conduct the business of the court or other duties mandated by state law." *Williams*, 28 F. App'x at 388-89. Therefore, sovereign immunity may bar suit against Ohio clerks of court as well. *Id.*; *Michelle R.*

*v. Vil. of Middleport, Ohio*, No. 2:19-cv-2272, 2020 U.S. Dist. LEXIS 46235, 2020 WL 1275686, at *3-5 (S.D. Ohio Mar. 17, 2020) (court clerk sued in his official capacity was immune from § 1983 claims under the Eleventh Amendment). And, as set forth above, issuing arrest warrants is one of their duties mandated by state law. *See, e.g.,* Ohio Rev. Code § 2303.26 (duties of clerk); Ohio Rev. Code § 2935.10(A) (an arrest warrant may be issued by a clerk).

As Swann points out in his Opposition (*see* Doc. No. 44 at PageID 527), sovereign immunity may not apply where declaratory relief is sought. *Leppla*, 2020 WL 5106841, at *5; *Ward*, 640 F. App'x at 467-68 (sovereign immunity did not bar plaintiff's declaratory judgment claim against Ohio judge and court clerk in their official capacities). However, a claim for declaratory judgment is "actionable only to the extent it seeks prospective relief." *Ward*, 640 F. App'x at 468. "Article III's case-or-controversy requirement, moreover, operates to ensure that declaratory relief is available only when a live controversy continues to exist." *Id.*

Here, the Amended Complaint does not seek prospective relief. (Doc. No. 26 at PageID 341 (asking the Court to declare that "Defendants' acts and conduct <u>have</u> … <u>violated</u>" Swann's rights) (emphasis added).) Thus, the declaratory relief sought here is not actionable. *Ward*, 640 F. App'x at 467-68; *Cole v. Mich. Dept. of Corrections*, No. 2:18-CV-159, 2020 U.S. Dist. LEXIS 179007, 2020 WL 5793097, at *1 (W.D. Mich. Sept. 29, 2020) ("[b]ecause Plaintiff is not seeking prospective relief, Defendants are entitled to sovereign immunity on the official capacity claims"). And, because Ohio clerks of court are considered arms of the state when they conduct the business of the court, and the allegations here concern the business of the court in issuing an arrest warrant, the Court finds that sovereign immunity bars Swann's federal claims against the Hamilton County Clerk of Courts. Therefore, the First Cause of Action, Second Cause of Action, and Fourth Cause of Action against the Hamilton County Clerk of Courts are dismissed. *Williams*, 28 F. App'x at

388-89.

### B. Ohio State Law Claims

Finally, given that this case will proceed against defendants other than the Hamilton County Defendants regardless of the outcome of the Motion, the Court addresses the Ohio state law claims brought against the Hamilton County Defendants. Among other arguments, the Hamilton County Defendants argue that they are entitled to state law immunity with respect to those claims. (Doc. No. 30 at PageID 455-57.) As explained by the Ohio Supreme Court in *Lambert v. Clancy*, 927 N.E.2d 585, 2010-Ohio-1483, at ¶1 (Ohio 2010), a different immunity analysis is conducted regarding claims against a defendant in his or her personal capacity versus his or her official capacity.

### (1) Official-capacity state law claims against Pureval and Hartmann

Like the federal claims, the Ohio state law claims against Pureval and Hartmann in their official capacity are treated as claims against the Hamilton County Clerk of Courts. *Molnar v. City of Green*, 140 N.E.3d 1208, 2019-Ohio-3083, at ¶ 10 (Ohio Ct. App. 2019) ("[t]he allegations in a complaint directed against an officerholder or employee in an official capacity is an action against the entity itself"); *R.K. v. Little Miami Golf Ctr.*, 1 N.E.3d 833, 2013-Ohio-4939, at ¶ 43 (Ohio Ct. App. 2013) (a suit brought against an employee of a political subdivision in the employee's official capacity is an action against the entity itself, and the employee is entitled to the same immunity as the political subdivision). Chapter 2744 of the Ohio Revised Code "addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions." *Lambert*, 2010-Ohio-1483, at ¶ 8. In his Amended Complaint, Swann acknowledges that the Hamilton County Clerk of Courts is a "political subdivision" (Doc. No. 26 at PageID 316). *See also Lambert*, 2010-Ohio-1483, at ¶¶ 17, 20 (recognizing that the clerk of courts is a political subdivision).

Determining whether a political subdivision is immune from liability under Ohio Rev. Code § 2744.02 involves a three-tiered analysis. *Lambert*, 2010-Ohio-1483, at ¶ 8. At the first tier, political subdivisions are provided a general grant of immunity. *Id.* The statute states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). At the second tier, another portion of the statute specifies five exceptions to this general grant of immunity. *See* Ohio Rev. Code § 2744.02(B). At the third tier, if any of those exceptions to immunity apply, then immunity is reinstated if any of the defenses to liability contained in Ohio Rev. Code § 2744.03 apply. *Lambert*, 2010-Ohio-1483, at ¶¶ 8-9. One of those defenses is that a "political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function." Ohio Rev. Code § 2744.03(A)(1).

Here, Swann asserts, without any analysis, that Ohio Rev. Code §§ 2744.02(B)(5) and 2744.03(A)(6)(a), (b), and (c) "creates liability here." (Doc. No. 44 at PageID 533.) However, first, even if the exception to immunity at § 2744.02(B)(5) applied, the defense in § 2743.03(A)(1) reestablishes immunity because issuance of an arrest warrant by a court clerk is a quasi-judicial function. *Harper v. New Philadelphia Mun. Court*, No. 94APE12-1806, 1995 Ohio App. LEXIS 2359, 1995 WL 347863, at *3 (Ohio Ct. App. June 8, 1995) (claim that a clerk and deputy clerk failed to ensure that no arrest warrant would be issued related to acts or omissions "within the scope of their quasi-judicial duties"); *Inghram*, 1996 WL 100843, at *3 (even if plaintiff's complaint adequately pleaded willful conduct to support various state law claims arising out of his arrest on a mistaken identification, defendant city was entitled to have the claims against it

dismissed pursuant to state law sovereign immunity). Second, Ohio Rev. Code §§ 2744.03(A)(6)(a), (b), and (c) do not apply to claims against a political subdivision or official-capacity claims against an employee of a political subdivision; they apply to personal-capacity claims against an employee of a political subdivision. *Inghram v. City of Sheffield Lake*, No. 69302, 1996 Ohio App. LEXIS 872, 1996 WL 100843, at *2-3 (Ohio Ct. App. Mar. 7, 1996) (the exception to immunity when an "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner" applies only to individual employees, not to political subdivisions). Therefore, the Hamilton County Clerk of Courts, as well as Pureval and Hartmann in their official capacity, are immune from liability for the state law claims against them. Those claims must be dismissed.

### (2) Individual-capacity state law claims against Pureval and Hartmann

Under Ohio law, "[i]mmunity is also extended to individual employees of political subdivisions." *Lambert*, 2010-Ohio-1483, at ¶ 10. Regarding individual-capacity claims against such employees, Ohio Rev. Code § 2744.03(A)(6) "provides that an employee is personally immune from liability unless '(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.'" *Lambert*, 2010-Ohio-1483, at ¶ 10 (quoting Ohio Rev. Code § 2744.03(A)(6)). Thus, there are three exceptions to the general grant of immunity to individual employees of political subdivisions. Additionally, another section of Ohio Rev. Code § 2744.03 provides that "[t]he political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or

established by the Revised Code."  Ohio Rev. Code § 2744.03(A)(7).

Moreover, "[i]t is well-established under Ohio law that court clerks and other court employees have absolute immunity against suits arising out of the performance of judicial or quasi-judicial activities."  *Inghram*, 1996 WL 100843, at *3; *see also Smith v. A.B. Bonded Locksmith, Inc.*, 143 Ohio App. 3d 321, 757 N.E.2d 1242, 1247 (Ohio Ct. App. 2001) (Ohio courts have recognized that "agents of the court also have absolute immunity from suits that arise from acts that are judicial or quasi-judicial").  "[C]ourt clerks have absolute immunity in the performance of judicial functions, such as the issuance of a warrant."  *Inghram*, 1996 WL 100843, at *4.  The claims against Pureval and Hartmann concern the issuance of an arrest warrant in their role as court clerk or deputy court clerk.  Therefore, for essentially the same reason that they are entitled to absolute immunity regarding the federal claims against them in their individual capacity, Pureval and Hartmann are entitled to absolute immunity regarding the state law claims against them in their individual capacity.  *Smith*, 757 N.E.2d at 1247; *Inghram*, 1996 WL 100843, at *3-4.

Thus, the Sixth Cause of Action against Pureval and Hartmann in their individual capacity, as well as the Seventh Cause of Action against Hartman in her individual capacity, are dismissed.  The Court does not need to address the Hamilton County Defendants' additional arguments in support of dismissal of the claims against them.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Hamilton County Defendants' Motion to Dismiss (Doc. No. 30).  All claims against Defendants Clerk Aftab Pureval, Deputy Clerk Gloria Hartman, and the Hamilton County Clerk of Courts are **DISMISSED**.  This case will continue against the remaining defendants.  In accordance with the Court's March 29, 2022 Order,

the Court will set a preliminary pretrial conference by separate entry, and the case will be automatically referred to Magistrate Judge Peter B. Silvain, Jr. following issuance of the preliminary pretrial conference order.

DONE and ORDERED in Dayton, Ohio, this Thursday, May 19, 2022.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE